Okay, the next argued case is number 16-2475, AIDS Healthcare Foundation against Gilead Sciences Incorporated. Mr. Hipskind. Thank you, your honors. May it please the court. The AIDS Healthcare Foundation is the largest non-profit provider of HIV and AIDS medical drugs. I take it that the problem here is that you'd like to get some generic drug manufacturer to file an ANDA and you'd like to have the issue of patent validity determined before that happens so that it can move forward quickly without delay, right? That is correct, your honor. So the problem I'm having is under 28 U.S.C. 955, the ANDA filer is precluded from requesting a declaratory judgment, as I read the section, until after 45 days after the ANDA filing. So why shouldn't that same limitation apply to your client, in other words, why shouldn't your client be treated the same as the ANDA filer insofar as the ability to request declaratory judgment is concerned? That specific provision is actually talking about, so after a generic files an ANDA, it gives the branded manufacturer an opportunity to file suit or to allow the ANDA application to go through. But here, that shouldn't apply because our client, AHF, is not filing an ANDA. It is not a generic manufacturer. You agree that if this were an ANDA filer who were doing this, that a declaratory judgment action by the ANDA filer would be barred by section 955? Yes, your honor, I would. So why should your client be able to circumvent that time limitation by suing on behalf of the ANDA filer? Because our client is currently engaging in activities that give rise to a potential induced infringement liability. So under the Hatch-Waxman provisions, you're pointing to a particular provision that bars an ANDA filer from filing a declaratory judgment action until 45 days after filing the ANDA, but the Hatch-Waxman also provides safe harbors for the activities that ANDA filers engage in. Our client is not protected by any of these safe harbors, and it's this present liability that's giving rise to, or it's these present activities that are giving rise to a future liability once an ANDA is filed. But you couldn't make the filing in your name, right? There would have to be an ANDA filing for you to achieve the purpose that you're seeking. That's correct, your honor. So that's prohibited. That is prohibited by an ANDA filer. However, the activities that our client is engaged in presently give rise to an induced infringement. But what difference would it make? It couldn't be performed, could it, if you succeed? It cannot be performed until, I guess I'm not sure I understand your question. I'm trying to understand your purpose. You're seeking a consequence which is barred by law. I don't believe that it is, your honor. The ANDA filing would not be available, would it, to a generic? An ANDA filing is not available to a generic presently, that is correct. How do you obtain the product? What we're trying to do is expedite generic entry. The problem is, Judge Newman is asking a great question, which is how can you possibly have induced infringement when there's no direct infringement? Induced infringement requires an act of direct infringement. So there's no direct infringement. I agree. There is presently no direct infringement. There will be a direct infringement. You're putting your direct infringement is based on what the ANDA filer will do, right? Correct. So our client is currently engaging in activities that are going to induce an ANDA filer to file an ANDA. It's the activities of our client that will give rise to an inducement claim that they are seeking a declaratory judgment action to clear the air of that uncertainty of the inducement claim. I admit that the inducement claim will not be perfected. Gilead would not be able to file such a claim against our client until the ANDA is filed. But it's the activities that are presently occurring that give rise to our client's liability. There are no activities occurring that relate to direct infringement, right? Well, no. There are activities that are encouraging generics to... There might be encouragement, but there's no activities occurring that relate to direct infringement, which is a prerequisite for inducement, right? Yes, Your Honor. Direct infringement is a prerequisite. Are there activities that relate to direct infringement? Not presently. There won't be a direct infringement until an ANDA is filed. At least until like November 2019 or a year later? That's correct. Yeah. Yeah, but I mean, if there were no statutory bar here, the whole purpose of the Declaratory Judgment Act is to permit people to resolve future uncertainties, even though the future activity doesn't bite at this time. I'm not unsympathetic to that argument, but I'm still troubled by how you can evade 21 U.S.C. 955 by saying that you're trying to get somebody to file an ANDA, and the person who filed the ANDA couldn't sue now because of the statutory limitation, and how could it be that Congress would allow you to sue? There's no statutory bar for purchasers such as AHF, who is attempting to induce liability or excuse me. Why would Congress want to bar the ANDA filer from suing but permit someone who deals with the ANDA filer to sue? I'm puzzled by that. It looks as though the legislative history of this suggests that the purpose of 955 and the limitation on declaratory judgment actions was to create a period where the original drug NDA filer didn't have to worry about litigation, right? I mean, that seems to be the purpose of this. So why would Congress have wanted someone who is trying to get someone to file an ANDA to be treated better than someone who is planning to file the ANDA itself? I'm just puzzled. Well, I don't see that they're treated better. Our client is engaging in activities that expose it to liability and expose it to a claim years from now. The provision that you're talking about is... You can't be liable until there's direct infringement, right? You agree with that. I do. But it's the activities that AHF are engaged in today that would give rise to that liability. So but for the filing of an ANDA, a 271B inducement claim against our client would be based on the activities today. And that's why a declaratory judgment action is necessary in order to get rid of that threat of this future liability. And addressing your question about the 45 days, that is a modest period where the branded pharmaceutical can decide whether it is going to file suit against the ANDA filer. But what we have here is actually the interplay of NCE exclusivity that prohibits, new chemical entity exclusivity, that prohibits the filing of an ANDA until November 2019. So what relief are you requesting? An order that a specified generic producer will file an ANDA application when permitted to do so? No, Your Honor. We're requesting that the district court's order be reversed and that our client, AHF, has standing to challenge the patents that suit that give rise to its potential liability, which are the five patents in suit in the declaratory judgment action. That your client would be in the position of an ANDA filing, of an ANDA filer, but not restrained by the time restraints of hypothetical infringement? Well, not that our client would be in the position of an ANDA filer, just that our client would be in the position of a party seeking to eliminate the uncertainty of its legal liability. Even though there would be, there is a present, neither present nor induced infringement? There is only not a claim for induced infringement because there's no direct infringement, but the activities that would give rise to that claim are present. And I think that that's similar to the FINA research case that we cite in our briefing where the future direct infringement has not yet occurred, but there is substantial questions as to the activities that would give rise to an induced infringement allegation once that direct infringement were to occur in the future. And that's the same thing here. In the future, there will be an ANDA that's filed and Gilead will have the opportunity to file an induced infringement claim against AHF based on its activities today, unless AHF can say that claim would be baseless. There is no claim because the patents that you would be suing for induced infringement on are invalid. And so that dispute is real and immediate today, even though the direct infringement comes in the future. Why is it that the safe harbor doesn't protect you? So I believe that you're referring to the safe harbor from section 271E? Yeah. Which safe harbor? Yeah, the safe harbor of what is it, 271E, yeah. Because AHF is not preparing materials for submission to the FDA. Well, it's asking somebody to do that. That's correct. But that is separate from preparing the materials. In fact, we point to an... So you're saying that somebody could induce infringement and incur liability even though the infringement itself is protected by the safe harbor? Yes, because the infringement isn't protected by the safe harbor. It's the activities of the generic manufacturer in preparing the end of filing that are protected. I take it there's no case law on this, right? There is. In this circuit, there's... Let me find this. Forest Labs versus IVAC's Pharmaceuticals, there was a 271E2, the act of filing an ANDA could support an action for induced infringement. And in this case, in our briefing, we cite to a number of... Does that case talk about the safe harbor? I believe that it does, yes. But in this case... I thought you said it was the act of filing an ANDA. The infringement? Yes. Yes. That's right. So the act of filing is the infringement, and the activities that induce a generic, for example, by our client, AHF, that induce a generic to file the ANDA are not protected by the safe harbor, and those are the inducement activities that have induced the direct infringement. The direct infringement... It's not the activities under the safe harbor. Correct. It is a hypothetical, statutorily declared act of infringement under Hatch-Waxman. There is no direct infringement otherwise. Right. That's correct, Your Honor. All right. Let's hear from the other side. Mr. Frischman. Good morning, ma'am. I'm here to formally please the court. What AHF wants relief for is a quintessentially constitutionally impermissible advisory opinion. No. That's a comment that could apply to the Declaratory Judgment Act as a whole, and the Declaratory Judgment Act does not violate Article III. That's quite true, Your Honor. And so the question is, you know, whether this satisfies the MedImmune standard for Declaratory Judgment Act. It's not as though they're seeking an advisory opinion. Anyone who files a Declaratory Judgment Act in that sense is asking for an advisory opinion about something. I would agree, Your Honor. I'm speaking of it in the MedImmune sense. This is far short of what MedImmune requires, because here, who the end-filer is going to be, what the product is going to be, when the end is going to be filed, when it might be approved are all hypothetical, are all speculative and unknown at this stage. I want to address, for a moment, the issue of induced infringement. There's no current liability for induced infringement, number one, because there's no precedent. But that doesn't mean that you can't worry about it, because activities that occur today could lead to liability in the future once an end is filed. I mean, if you could imagine a situation in which a month away from the end of filing, the foundation here is encouraging somebody to file an end. That could lead to inducement liability, right? I don't know that it could, Your Honor. And in this case, why not? First of all, because until an end is filed, there is no act of infringement. And so it's premature to assume it will get filed. What case says that if you induce before direct infringement, and the direct infringement ultimately occurs, you're not liable for inducement? I don't think there's a case like that, is there? That's not the case, Your Honor. The issue is whether or not there's any certainty. So in this hypothetical... Okay, but that's a different question. So my hypothetical is a month before the end of filing, the AIDS Foundation says, please file this end, that the Arab will help you file the end. They could incur liability for doing that, even though the direct infringement is a month in the future, right? I'm aware of no case in which there's been such. No, no, no. Answer my question. Is that true? It would depend on the facts, if there's enough certainty. If there's enough certainty. If there's enough certainty, and there's a defined product. I still question under this court's Sandoz decision and Benetech decisions, whether the infringement liability, induced or otherwise, can ever attach until the ANDA is filed. But that's not this case by a long shot, because here there are no concrete allegations. For example, who have they induced? The only allegations in the complaint concerning inducement, which is, I think it's important because otherwise their liability is only when the product is launched one day, their hypothetical liability. As far as inducement goes, the only allegations in the complaint about communications with generics is that they sent unsolicited letters and they were ignored. They acknowledged in questioning by the district court that there had been no response to those So on that record, there's no objective concern about inducement liability, even if hypothetically it would be possible to have inducement liability for an ANDA filing. That's not this case. Your position is that under Benetech and Sandoz, the fact that an ANDA might be filed in a few years, that just doesn't give rise to the kind of immediacy and reality required  That's correct, Your Honor. The reason is that Sandoz says that the lapse of time in and of itself is not determinative. Your argument has to rest not on the lapse of time. If there were certainty as to the identity of the ANDA filer and the ANDA that was going to be filed, the fact that that might be years away under Sandoz wouldn't prevent a declaratory judgment action, right? To the extent that there was no prospect of change in the intervening years, but that's again not this case. We don't know anything from the allegations about what ANDA will be filed, and it's a concrete issue. If you look at the patents in suit, there's five patents and 70 claims. So let me pick one example, the 219 patent owned by Japan Tobacco. It claims a drug called Albutegravir in combination with certain other drugs, one of which, one of the triple combinations can be with TAF. Of the four products that are at issue, individual, standalone product, and then a single, double, and triple combination, only one of them has Albutegravir. So there's no way to know when the ANDA comes, will it even include that particular drug and thus implicate that patent. The same holds true for the 374 patent, which claims a drug called Cobicistat. The same holds true arguably for the 791 patent, which claims TAF at a certain purity level without certain undesirable diastereomers. So some claims say less than 40%, 20%, or 5%. No way to know which of those claims might be implicated, if any of them or all of them. We just have no idea at this stage what liability could possibly rise in the future. So from the perspective of the declaratory judgment, this is far, far short of anything the court has previously held is sufficiently immediate, real, and definite to give rise to declaratory judgment concern. Has AHF filed any proceedings in the PTAB, for example, IPRs or anything like that? No, they have not. And certainly that was an option open to them if they wished to challenge the patent in the patent office. And of course, the IPR does not require a showing of Article III standing, as does proceeding in federal court. So that is an option they simply chose not to avail themselves of for whatever reason. Separate and apart from the question of immediacy and reality is also the question of whether or not there is adversity in the sense of any action taken by the declaratory judgment defendants, in this case, Japan Tobacco and Gilead, adverse to AHF. And in this case, there's none. So with regard to JT, there's no communication of any kind alleged between AHF and Japan Tobacco. With regard to Gilead, there's no affirmative act by Gilead that AHF can point to. So they're initiating this attempt to initiate the declaratory judgment claim by trying to manufacture their own dispute. So they write a letter and say, if you won't give us a covenant not to sue, then we think that gives us jurisdiction. But in court, they cite no case in which the court has found that that is sufficient in the absence of some other acts adverse to the declaratory judgment plaintiff. They point to prior litigation, but of course, I think it proves exactly the opposite point. All the prior litigation was directed against the antifilers or their corporate affiliates. Gilead hasn't sued end customers or clinics or non-profits like AHF. This issue will be resolved in due course in the course of ordinary hatch-wax litigation. And in fact, Your Honor, notable here is the fact that there are five patents in suit, but there are 12 in the Orange Book. And the Orange Book for the Genvoya, the four-drug product, is reproduced in the complaint. There are 12 patents listed therein, one of which is expired. So there are at least six unexpired patents for which a generic manufacturer, if that's the product they choose to make, is going to have to do a Paragraph 4 certification, go through the hatch-wax litigation, and this will all be resolved as Congress had contemplated before those patents expired. One of them, for example, expires, or two of them in 2026. So there's no urgency here, and nothing will be accomplished since not even all the patents at issue are the subject of this declaratory judgment case. And that same holds true for the other three products. Yeah, but we've said that if there are a couple of patents, that you don't have to sue on both of them to have a declaratory judgment action to strike down one of them. I don't disagree with that, Your Honor. My point here is rather that because there are other patents that will have to be litigated as part of the Paragraph 4, the acceleration here really accomplishes nothing. Even if it were constitutionally permissible, even if it didn't violate Section 955, there's nothing to be accomplished that won't get accomplished when and if there is Paragraph 4 litigation. And at least at that point, there will have been an act of defined infringement. One will know which patents there are actually disputes concerning, and which ones... The urgency would be to permit an immediate challenge to validity. It's not right? Never mind the ANDA. The immediate challenge to validity would only challenge five of the 12 patents in the Orange Book. Maybe. But if it challenges the broadest ones to the foundation product, perhaps that would be useful to the public, represented by this complainant. Your Honor, I think it would be speculative as to whether it would have any utility at all because, for example, depending on what drug the generic files on, what combination, some of these patents may never be asserted at all. But that's their problem. If they're allowed to challenge validity, then these other issues might be on the table. The question is whether they can come into court at all on their own initiative and challenge validity. That's what they're asking for. That is absolutely the fundamental question. What we would submit is that on this record, where there's no product in development that we're aware of. We don't even know who will develop it. We know it's not AHF. We don't know when they will develop it. You're saying that it's impractical, but that isn't what they're asking for. They're just asking for the right to come into court and fight. It's more than impractical, Your Honor. It's so indeterminate that it doesn't meet the immediacy or the reality requirements of MedImmune. This dispute is absolutely and completely hypothetical because there's no idea what product is going to be made and thus what issues need to be litigated. It's a hypothetical dispute in which the court is potentially going to be asked to address claims that will never be of practical relevance because, for example, the generic will file on a different combination of products and those claims would never even be asserted. It's that kind of practical requirement in MedImmune of immediacy and reality that there would be actual current harm that drives the fact that there's no court of interdiction. No, it doesn't have to be current harm. The whole purpose of the Declaratory Judgment Act is somebody says, I'm going to do something in the future which may create liability and I'd like to know whether that's permissible or not. It does not have to be current harm. I would agree with you, Your Honor. It has to be either current or imminent and to the extent I suggested one and not the requirement of MedImmune and the Declaratory Judgment Act and there's no imminent harm here. AHF, to the extent it's ever going to be exposed to infringement liability, it'll happen after a generic files, goes through the FDA process, if it's successful, gets a product approved, chooses to launch that product and at that point, AHF will be in a position to purchase the product and presumably use it and thereby have liability. But there's no allegation here that would suggest that they face any plausible liability before that time. Are there no further questions? Any more questions? Any more questions? Okay. Thank you, counsel. Mr. Hibbs. Just a couple of brief points. Address the concreteness issue, would you, because that seems to be their main argument, is that we don't know what the ANDA would look like, we don't know exactly what you're trying to do and you haven't made it clear in the complaint. Yes. So, the concreteness argument is largely a red herring. Where this comes up in this court's cases are largely in the context of declaratory judgments involving non-infringement. Here, AHF is only seeking a declaratory judgment of invalidity of the patents in suit. And as we were discussing earlier- Yeah, but the problem that they say is there are several different patents here, several different claims. We don't know which ones would be implicated by the conduct that you're encouraging. Well, it's the artificial act of infringing of the ANDA filing that would be the infringement that AHF is inducing. So what the exact product would look like or what the details of the ANDA filing are really don't apply to a declaratory judgment claim of invalidity of the patent. Because we're not measuring infringement. Well, I'm not sure that's true. Aren't you basing your claim of a dispute based on some induced infringement of a specific product? No, Your Honor. I mean, of a product, though. So- No, as you're talking about, the infringement's a hypothetical, artificial, statutory infringement of the ANDA filing. It's not the future sales of the actual generic product. So it's based on the assumption that somebody's going to have an ANDA filing. Yes. Yes. But you never represented that your client would file the ANDA, isn't that right? That's correct. You just hope somebody else will. Well, and Gilead tries to inject a certain amount of uncertainty. But if you look at the facts that are pled and that we cite in our briefing, TDF, which is the Tenofovir predecessor of TAF, there were three ANDAs that were filed. And this is just a minor change in the product. So this uncertainty that Gilead's trying to inject in the inevitability of an ANDA is really red herring because we know from past experience that there's great interest on the part of generics in this particular drug due to- Yeah, but so why didn't you file something which said, we want somebody to produce this specific product that looks this way, and we think that that potentially would infringe X, Y, and Z claims of these patents, and we'd like a declaratory judgment that those claims are invalid. But you didn't do that. I see my time's up. May I respond? Yeah, you don't have the right to sit down yet. Yeah. I believe that we did. We specifically asked for generic versions of Genvoia, which was the first TAF-containing product Gilead released. So that is a specific copy of a specific concrete product that we are requesting generic manufacturers to undertake the ANDA process for. Okay. Any more questions? Thank you. Thank you both. The case is taken under submission.